UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re | Case No: 26-11206-jpm |
| | Chapter 13 |
| OSCAR A. ARGUETA | |
| Debtor. | |

**DEBTOR'S OPPOSITION TO MOTION OF SERENA MORGAN BAKER TO DISMISS DEBTOR'S CHAPTER 13 CASE, OR IN THE ALTERNATIVE, <u>GRANTING RELIEF FROM THE AUTOMATIC STAY</u>**

Debtor Oscar A. Argueta (the "Debtor"), by and through his undersigned counsel, respectfully submits this Opposition to the Motion of Serena Morgan Baker ("Ms. Baker" or the "Movant") seeking dismissal of this Chapter 13 case pursuant to 11 U.S.C. § 109(e), or, alternatively, relief from the automatic stay to compel the Debtor to execute and record a mortgage against his New York cooperative apartment (the "Motion"). For the reasons set forth below, the Motion should be denied in its entirety.

## <u>INTRODUCTION</u>

1.       At its core, the Motion asks this Court to determine the enforceability of a state-court order that remains the subject of a timely pending appeal before the Connecticut Appellate Court. Ms. Baker contends that the Debtor is ineligible for Chapter 13 relief because his scheduled unsecured debts exceed the statutory limitation under 11 U.S.C. § 109(e). This argument rests primarily on a claim stemming from the November 25, 2025 Memorandum of Decision issued in the parties' Connecticut matrimonial proceeding (the "November 2025 Order"), which is currently under appellate review (see November 2025 Order attached hereto as "Exhibit A). The pending appeal directly challenges the legal and factual bases of the monetary award, including liability

1

and the amount of the obligation. Consequently, the claim remains subject to a bona fide dispute and should not be counted as a fixed, noncontingent, and liquidated unsecured debt for eligibility purposes absent, at minimum, an evidentiary hearing or deferral pending resolution of the appeal.

2. Ms. Baker's alternative request for relief from the automatic stay is similarly without merit. She seeks to compel the Debtor to execute and record a mortgage against property of the bankruptcy estate based on the same non-final Connecticut order. Such relief would not involve a purely ministerial act but rather the enforcement of a disputed judgment that remains subject to reversal, modification, or remand. The Debtor retains both legal and equitable interests in the New York cooperative apartment, rendering it property of the bankruptcy estate under 11 U.S.C. § 541 and fully protected by the automatic stay.

3. Moreover, the New York cooperative constitutes the Debtor's principal asset and is essential to his ability to propose and consummate a feasible Chapter 13 plan. Granting stay relief at this stage would permit one creditor to obtain the principal relief sought in the pending Connecticut litigation before the appellate process concludes and before this Court has determined the nature, validity, and extent of the Movant's claim. Such relief would undermine the fundamental purposes of the automatic stay by disrupting the orderly administration of the estate and impairing the Debtor's opportunity to reorganize.

4. Finally, nothing in the record supports any suggestion that this bankruptcy case was commenced in bad faith. The Debtor filed this case to preserve the protections afforded by the Bankruptcy Code while addressing all creditor claims—including any claim ultimately determined to be valid in favor of Ms. Baker—through the Chapter 13 process. The filing reflects a legitimate effort to reorganize, not an attempt to evade lawful obligations or frustrate the judicial process.

5.     For these reasons, and those discussed more fully below, the Motion to dismiss and the alternative request for relief from the automatic stay should each be denied in their entirety. Alternatively, should the Court conclude that factual issues remain regarding the nature or amount of Ms. Baker's claim for purposes of § 109(e), the Court should defer ruling or conduct an evidentiary hearing before determining the Debtor's eligibility for Chapter 13 relief.

## STATEMENT OF FACTS

### A.  The Parties' Marriage and the Connecticut Divorce Proceedings

6.     The Debtor and Ms. Baker were married on July 9, 2009, and are the parents of two children. Their marriage was dissolved by Judgment of the Connecticut Superior Court entered on January 8, 2020, as subsequently corrected on May 22, 2020 (the "Divorce Judgment").

7.     Among other provisions, the Divorce Judgment awarded the Debtor sole ownership of the cooperative apartment located at 442 Amsterdam Avenue, Unit 3C, New York, New York (the "New York Cooperative"), while requiring him to transfer to Ms. Baker certain real property located in El Salvador known as the "Taquillo Property."

8.     Following entry of the Divorce Judgment, the Debtor was unable to complete the transfer of the Taquillo Property due to litigation commenced by his mother in El Salvador. As a result of that litigation, a lien was placed against the property in December 2020, preventing the Debtor from conveying clear title to Ms. Baker. Ms. Baker then commenced post-judgment proceedings in the Connecticut Superior Court seeking enforcement of the Divorce Judgment and sanctions against the Debtor.

**B.      The November 25, 2025 Memorandum of Decision**

9.      Following a multi-day evidentiary hearing conducted on May 20, 21, 22, 27, and 28, 2025, the Honorable Erika M. Tindill issued the Memorandum of Decision dated November 25, 2025 (the "November 2025 Order") (Exhibit A).

10.     In the November 2025 Order, the Connecticut Superior Court determined, among other things, that: (a) the Debtor would no longer satisfy his obligations under the Divorce Judgment by transferring the Taquillo Property but instead would pay Ms. Baker a monetary award of $600,000, payable in annual installments of $50,000 commencing December 31, 2025, together with interest at ten percent (10%) per annum; (b) the Debtor was directed to execute and record a mortgage note and mortgage against the New York Cooperative as security for the monetary obligation; and (c) Ms. Baker was awarded approximately $69,198 in attorney's fees and costs as sanctions.

11.     The court further stated that the Debtor's obligation to execute the mortgage documents would not be stayed by any appeal. These findings regarding the Debtor's good faith in the transfer of the Taquillo Property are now the subject of the pending appeal.  Id..

**C.      The Pending Connecticut Appeal**

12.     On December 15, 2025, the Debtor timely filed a Notice of Appeal to the Connecticut Appellate Court from the November 2025 Order. The appeal remains pending under Docket No. AC 49439 (see Notice of Appeal attached hereto as Exhibit "B)".

13.     The appeal challenges the substantive rulings contained in the November 2025 Order, including the substitution of a monetary award for the property transfer required by the Divorce Judgment, the contempt findings, the amount of the monetary award, and the award of

attorney's fees and sanctions. Accordingly, both liability and the amount of the asserted obligation remain the subject of active appellate review.

### D.  **The Debtor's First Chapter 13 Case**

14.     The November 2025 Order required the Debtor to execute the mortgage documents on or before December 31, 2025. On that same date, the Debtor commenced his first Chapter 13 bankruptcy case in this Court.

15.     After filing the petition, the Debtor determined that additional time was necessary to address certain scheduling and disclosure issues, particularly with respect to assets located in El Salvador. Accordingly, on April 9, 2026, the Debtor voluntarily dismissed the case without prejudice in order to ensure that any subsequent filing would contain complete and accurate disclosures.

### E.  **The Present Chapter 13 Case**

16.     Following dismissal of the prior case, Ms. Baker resumed her efforts to enforce the November 2025 Order. On May 14, 2026, she filed a Motion for Contempt in the Connecticut Superior Court seeking to compel compliance with that Order.

17.     One week later, on May 21, 2026, the Debtor commenced the present Chapter 13 case in order to reorganize his financial affairs under the Bankruptcy Code and to address all creditor claims in a single forum.

18.     In his schedules, the Debtor listed Ms. Baker's claim as a nonpriority unsecured claim in the amount of $669,198.14 (expressly identified as disputed), together with a priority domestic support obligation in the amount of $1,335.00, and approximately $276,950.00 in student loan obligations plus additional unsecured consumer debt (see ECF Doc No. 7). Ms. Baker subsequently filed Proof of Claim No. 7-1 asserting an unsecured claim in the amount of

$708,495.60 (see proof of claim attached hereto as Exhibit "C"). The Debtor disputes the validity and amount of that claim and intends to object to its allowance pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007. Excluding Ms. Baker's disputed claim, the Debtor's remaining scheduled unsecured indebtedness falls well below the debt limitation set forth in 11 U.S.C. § 109(e).

## ARGUMENT

**I.** **THE DEBTOR REMAINS ELIGIBLE FOR CHAPTER 13 RELIEF UNDER 11 U.S.C. § 109(e)**

**A.** **Legal Standard Governing Eligibility Under § 109(e)**

19.     Section 109(e) of the Bankruptcy Code limits Chapter 13 eligibility to an individual with regular income who, as of the petition date, owes "noncontingent, liquidated, unsecured debts of less than $526,700" and "noncontingent, liquidated, secured debts of less than $1,580,125." 11 U.S.C. § 109(e). Whether a debtor satisfies those statutory limitations is determined as of the commencement of the bankruptcy case and requires evaluation of the nature of the obligations existing on the petition date.

20.     Although the Bankruptcy Code does not expressly define the terms "noncontingent" and "liquidated" for purposes of § 109(e), courts have consistently recognized that debts subject to a bona fide dispute concerning liability or amount require careful scrutiny before being included in the eligibility calculation. Where the validity, enforceability, or amount of a claim remains genuinely disputed, the Court must determine whether the asserted debt constitutes a fixed and readily ascertainable obligation or whether further factual or legal determinations remain necessary before the claim may properly be treated as a qualifying unsecured debt under § 109(e).

21.     A debt is generally considered contingent when liability depends upon the occurrence of a future event that may never occur. Likewise, a debt is considered liquidated when

the amount is fixed or readily ascertainable without the need for extensive factual or legal determinations. Where liability and amount remain the subject of a genuine and good-faith dispute, bankruptcy courts recognize that eligibility may require an evidentiary inquiry rather than mechanical reliance upon the amount scheduled by a creditor. The burden ultimately rests upon the Debtor to establish eligibility; however, when eligibility turns upon a disputed claim, dismissal is inappropriate without an adequate factual record.

       **B.**       <u>**Ms. Baker's Asserted Claim Remains the Subject of a Bona Fide Dispute**</u>

22. The Motion's request for dismissal depends almost entirely upon treating Ms. Baker's asserted claim—now reflected in Proof of Claim No. 7-1 in the amount of $708,495.60—as a fixed, noncontingent, and fully enforceable unsecured obligation for purposes of 11 U.S.C. § 109(e). That premise is fundamentally flawed. Although Ms. Baker has filed a Proof of Claim, the Debtor disputes both the validity and amount of the claim, intends to object to its allowance pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007, and continues to prosecute a pending appeal from the underlying Connecticut Judgment upon which the claim is based. Accordingly, the claim cannot simply be accepted at face value for purposes of determining the Debtor's eligibility under § 109(e).

23. Ms. Baker's claim arises exclusively from the Connecticut Superior Court's November 25, 2025 Memorandum of Decision. That decision is presently the subject of a timely appeal pending before the Connecticut Appellate Court under Docket No. AC 49439. The appeal directly challenges the legal and factual foundation of the November 2025 Order, including the trial court's decision to substitute a monetary award in place of the transfer of the Taquillo Property, the findings supporting the contempt determination, the amount of the monetary award, and the award of attorney's fees and sanctions.

24.     Until the appellate process concludes, both the existence and the amount of any ultimately enforceable obligation remain uncertain. The Debtor has consistently maintained this position throughout these proceedings, scheduling Ms. Baker's claim as disputed in compliance with his disclosure obligations under the Bankruptcy Code. The filing of a proof of claim merely initiates the claims allowance process and does not establish the validity, enforceability, or amount of the asserted claim, nor does it extinguish the Debtor's pending appellate rights.

C.      **The Pending Appeal Precludes Mechanical Application of the § 109(e) Debt Limitation**

25.     The existence of the pending Connecticut appeal is significant because it demonstrates that the November 2025 Order has not yet achieved finality. The appellate proceedings place directly before the Connecticut Appellate Court the issues of liability, damages, and sanctions that comprise virtually the entirety of Ms. Baker's asserted unsecured claim.

26.     Obligations that remain subject to genuine appellate review differ materially from fixed liabilities that are no longer subject to judicial reconsideration. Consistent with New York authority distinguishing probable liabilities from purely contingent obligations in insolvency contexts, the full amount asserted by Ms. Baker should not be mechanically included in the § 109(e) calculation until the appeal concludes. See, e.g., *Staten Island Sav. Bank v. Reddington*, 260 A.D.2d 365 (2d Dep't 1999); *Trojan Hardware Co. v. Bonacquisti Constr. Corp.*, 141 A.D.2d 278 (3d Dep't 1988).

D.      **Excluding the Disputed Claim, the Debtor Satisfies the Statutory Debt Limitation**

27.     Excluding Ms. Baker's disputed claim, the Debtor's remaining unsecured indebtedness consists primarily of approximately $276,950.00 in student loan obligations together

with modest consumer debt—well below the debt limitation set forth in 11 U.S.C. § 109(e). The sole basis upon which the Movant contends that the Debtor exceeds the statutory debt limit is the disputed claim arising from the Connecticut Judgment, which remains pending on appeal and is the subject of the Debtor's anticipated objection to the Proof of Claim.

28. Dismissing this Chapter 13 case before the claims allowance process has been completed would be premature and would improperly deprive the Debtor of his statutory right to object to Ms. Baker's Proof of Claim.

**E.      At a Minimum, the Court Should Conduct an Evidentiary Hearing Before Determining Eligibility**

29. Even assuming the Court concludes that the nature of Ms. Baker's claim cannot be resolved solely from the existing record, dismissal remains unwarranted. Eligibility under § 109(e) should not be determined by accepting the Movant's characterization of her claim at face value where substantial factual and legal disputes remain pending before the Connecticut Appellate Court. Rather, if the Court determines that the present record is insufficient to resolve the disputed issues affecting eligibility, the appropriate course is to conduct an evidentiary hearing or defer determination of the eligibility issue until the Connecticut appeal has been resolved. Such an approach will permit the Court to determine the proper characterization and amount of Ms. Baker's claim upon a complete factual record.

30. Accordingly, the Motion to Dismiss pursuant to 11 U.S.C. § 109(e) should be denied.

**II.    THE MOVANT HAS FAILED TO ESTABLISH CAUSE FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(d)**

     **A.    Legal Standard for Relief from the Automatic Stay**

31.    The filing of a bankruptcy petition operates as an automatic stay of certain prescribed actions, including "the commencement or continuation" of judicial proceedings against the debtor and "any act to create, perfect, or enforce any lien against property of the estate." *Bank of N.Y. Mellon v. DeMatteis*, 222 A.D.3d 1 (2d Dep't 2023). The automatic stay is effective immediately upon filing, without further action. *Id.*

32.    A party seeking relief from the automatic stay under § 362(d) bears the burden of proof. Section 362(d) provides that the court shall grant relief from the stay "for cause" under § 362(d)(1), or with respect to property, if the debtor does not have equity in the property and the property is not necessary to an effective reorganization under § 362(d)(2). 11 U.S.C. § 362(d). Only a bankruptcy court has jurisdiction to terminate, annul, or modify the automatic stay; judicial actions taken against a debtor are void *ab initio* absent relief from the automatic stay. *Emigrant Sav. Bank v. Rappaport*, 20 A.D.3d 502 (2d Dep't 2005).

     **B.    The Proposed Mortgage Recording Is Not a Ministerial Act Under Controlling Second Circuit Precedent**

33.    Ms. Baker argues that the execution and recording of the mortgage constitute "ministerial acts" that do not violate the automatic stay, relying on the Second Circuit's decision in *In re Rodgers*. That reliance is misplaced. In *Rodgers*, the Second Circuit held that if a debtor's interest in property was terminated pre-petition, the transfer of the deed is a mere ministerial act and the automatic stay is not implicated. *See also Sutton 58 Assocs. LLC v. Pilevsky*, 36 N.Y.3d 297 (2020).

34.     Here, the Debtor retains both legal and equitable interests in the New York Cooperative. The November 2025 Order does not purport to convey title or terminate the Debtor's ownership; it merely directs the Debtor to execute a mortgage as security for the monetary award. The Debtor's interest in the cooperative remains intact, and the property constitutes property of the estate under § 541.

35.     Moreover, the November 2025 Order is not final—it is on appeal. The Connecticut Appellate Court has jurisdiction to reverse, modify, or remand the order, which could materially affect whether any mortgage obligation exists at all. Under these circumstances, enforcing the mortgage obligation would not be a purely clerical or ministerial act; it would constitute enforcement of a non-final state-court judgment that remains subject to appellate review. The Connecticut order's self-styling provision purporting to preclude any stay pending appeal has no effect on the independent federal automatic stay that arose upon filing of this petition. State courts cannot override or limit the automatic stay imposed by federal bankruptcy law. *Bank of N.Y. Mellon v. DeMatteis*, 222 A.D.3d 1 (2d Dep't 2023).

### C..     <u>**Cause Does Not Exist Under § 362(d)(1) or (d)(2)**</u>

36.     Even if the Court were to find that the ministerial-act exception does not apply, Ms. Baker has not demonstrated cause for stay relief under § 362(d)(1) or that the property is not necessary to an effective reorganization under § 362(d)(2).

37.     The Debtor has equity in the New York Cooperative and can provide adequate protection through plan payments or other means. The cooperative is the Debtor's residence and is essential to his effective reorganization. Lifting the stay would effectively grant Ms. Baker the very relief she seeks in the pending state appeal, undermining the appellate process and the Debtor's fresh-start objectives.

38.    Ms. Baker has not demonstrated any irreparable harm that cannot be addressed through the claims-allowance and plan-confirmation process. Her claim, once a proof of claim is filed, will be subject to objection and allowance proceedings. If her claim is ultimately allowed, she will be treated as a creditor in the Debtor's Chapter 13 plan and will receive distributions in accordance with the Bankruptcy Code's priority scheme.

39.    The automatic stay serves critical purposes in bankruptcy proceedings: it provides the debtor with breathing space to formulate a reorganization plan, ensures orderly administration of the estate, and protects creditors by preventing a race to the courthouse. *Bank of N.Y. Mellon v. DeMatteis*, 222 A.D.3d 1 (2d Dep't 2023). Lifting the stay here would undermine these purposes and grant Ms. Baker priority over other creditors without justification.

**D.    The Debtor's Filing of This Case Does Not Constitute Bad Faith**

40.    Ms. Baker suggests that the Debtor filed this second Chapter 13 case in bad faith to evade the November 2025 Order. This characterization is unsupported by the record. The Debtor's first case was voluntarily dismissed after he determined that additional time was needed to address scheduling and disclosure issues. The present filing occurred in direct response to Ms. Baker's post-dismissal contempt motion filed on May 14, 2026, and is intended to provide a centralized forum for the orderly treatment of all creditors, including Ms. Baker.

41.    New York courts have recognized that serial bankruptcy filings, standing alone, do not establish bad faith. Rather, courts examine the totality of the circumstances, including whether the debtor has a realistic possibility of reorganization, whether the filing is part of a scheme to delay or defraud creditors, and whether the debtor has complied with bankruptcy requirements. *Matter of Khoudary*, 124 A.D.3d 154 (1st Dep't 2014); *In re Gelbwaks*, 260 A.D.2d 47 (1st Dep't

1999). Here, the Debtor has regular income, proposes to treat all creditors through a confirmable plan, and has not engaged in abusive litigation tactics.

42. The cases cited by Ms. Baker involving attorney discipline for abusive bankruptcy filings are inapplicable. *In re Klein*, 231 A.D.2d 232 (2d Dep't 1997); *In re Toler*, 231 A.D.2d 223 (2d Dep't 1997). Those cases involved repeated filings with intentionally false or incomplete schedules, failure to appear at hearings, and deliberate misuse of the bankruptcy process. No such conduct is present here. The Debtor has timely filed complete schedules, appeared at all required proceedings, and is prosecuting this case in good faith.

## CONCLUSION

43. For all of the foregoing reasons, the Movant has failed to establish that dismissal of this Chapter 13 case or relief from the automatic stay is warranted. The Debtor remains eligible for relief under Chapter 13, and the Motion improperly seeks to predicate dismissal almost entirely upon a disputed claim arising from a Connecticut Judgment that remains pending on appeal and is the subject of the bankruptcy claims allowance process. Although Ms. Baker has now filed a Proof of Claim, the Debtor disputes the validity, enforceability, and amount of the asserted claim and intends to object to its allowance pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007. Under these circumstances, the Court should decline to treat the Proof of Claim as conclusively establishing the Debtor's eligibility under 11 U.S.C. § 109(e).

44. Likewise, the Movant has failed to demonstrate "cause" under 11 U.S.C. § 362(d) to modify or terminate the automatic stay. The New York Cooperative remains property of the bankruptcy estate, the Debtor retains both legal and equitable interests therein, and the property is essential to the Debtor's successful reorganization. Granting stay relief would permit enforcement

of a judgment that remains subject to appellate review and would improperly interfere with the orderly administration of this bankruptcy estate.

45.     Accordingly, the Debtor respectfully requests that this Court enter an Order: (a) denying the Motion to Dismiss the Debtor's Chapter 13 case in its entirety; (b) denying the Movant's alternative request for relief from the automatic stay pursuant to 11 U.S.C. § 362(d); (c) in the alternative, should the Court determine that genuine issues of fact or law remain regarding the characterization or amount of Ms. Baker's claim for purposes of 11 U.S.C. § 109(e), scheduling an evidentiary hearing before ruling on the Motion to Dismiss; (d) granting the Debtor leave to object to the allowance of Ms. Baker's Proof of Claim pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007, without prejudice to any rights or arguments concerning the pending Connecticut appeal; and (e) granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
      July 14, 2026

                        Respectfully submitted,
                        **LAW OFFICE OF JULIO E. PORTILLA, P.C.**
                        *Attorneys for the Debtor*
                        By:    */s/ Julio E. Portilla*
                        Julio E. Portilla
                        Law Office of Julio E. Portilla, P.C.
                        380 Lexington Avenue, Suite 446
                        New York, NY 10168
                        Tel: (212) 365-0292
                        Fax: (212) 365-4417